GEORGIANA HARRIS v. WILLIAM A. CLARK ET AL.

*Sale—Contract—Lien of vendor—Bill to foreclose.*

The bill in this case was filed to foreclose the contract set forth in the opinion, as a mortgage and lien upon the property therein described; and it is held that, whether or not the contract can be so regarded, there was no default on the part of the defendant save that which was occasioned by the refusal of the complainant to permit the payment of the purchase price of the property in the manner prescribed by the contract, and the bill is dismissed. The case is one purely of fact.

Appeal from Wexford. (Fallass, J.) Argued January 30, 1889. Decided April 12, 1889.

Bill to foreclose contract of sale as a mortgage. Defendants appeal. Reversed. The facts are stated in the opinion.

*D. E. McIntyre,* for complainant.

*M. D. Chatterton,* for defendants.

MORSE, J. On August 17, 1882, the complainant and the defendant William A. Clark entered into a written agreement, as follows:

"This agreement, made and entered into August 17, A. D. 1882, by and between Georgiana Harris, of the

city of Cadillac, Wexford county, Mich., party of the
first part, and William A. Clark, of the same place, party
of the second part, witnesseth.

"That the said party of the first part, for and in con-
sideration of the sum of twenty-five hundred dollars, to
be paid to the said party of the first part as hereinafter
expressed, hereby agrees to sell to the party of the sec-
ond part all of the following described personal property,
to wit: A certain shingle-mill, with all machinery therein
contained, of whatever kind, name, or nature the same
may be, including boiler and engine; also her certain
boarding-house, and all boarding-house furniture therein
contained belonging to the party of the first part; also a
certain blacksmith shop, and all blacksmith tools therein
contained,—property being situated at the date hereof on
section number nineteen (19), town twenty-three (23)
north, of range nine (9) west.

"The said party of the second part, in consideration
of the premises, hereby agrees to purchase said above-
described property, and to pay therefor to the said party
of the first part, her executors, administrators, and
assigns, the sum of twenty-five hundred dollars, with
interest to be computed at the rate of seven per cent.
per annum, as follows, to wit: Seven hundred dollars on
the delivery of this agreement, the receipt whereof is
hereby confessed and acknowledged; the balance of the
purchase money, to wit, eighteen hundred dollars, to be
paid as follows: The said party of the first part is to
keep and retain for each and every thousand shingle cut
in said mill by the party of the second part the sum of
twenty-five cents, until the balance of the purchase price,
together with the interest thereon, is fully paid and dis-
charged.

"The said party of the first part does hereby agree to
and with the party of the second part that she will stock
said mill to its full capacity, so that he shall have full
and sufficient stock to run said mill eleven hours per day
for the space of two years from and after the date hereof,
and does hereby agree to pay the party of the second
part for each and every thousand merchantable shingle
cut under and by virtue of this contract, for stars and
number one, the sum of one dollar and ten cents, less
the sum of twenty-five cents per thousand to be paid first
party by second party on account of the purchase price
of said mill, as hereinbefore expressed,—all payments to

be made on the 15th day of the month for shingles cut the previous month during the life of this agreement; the party of the first part to keep the mill clear from shingles, and second party to deliver shingles piled outside of mill. The party of the second part shall brand all shingles manufactured on this contract. The party of the second part is to keep said mill insured in good companies, payable in case of loss to the party of the first part, as her interest may appear, in the sum of not less than eighteen hundred dollars, and to pay one-half of the premium therefor, which shall be charged upon this contract. and become a part of the principal.

"Witness our hands and seals this 17th day of August, A. D. 1882.

[Signed]          "GEORGIANA HARRIS.     [L. s.]
[Signed]          "WILLIAM A. CLARK."     [L. s.]

The complainant filed her bill in the circuit court for the county of Wexford, in chancery, to foreclose this contract as a mortgage and lien upon the property therein described. The main allegations of the bill are that the defendant William A. Clark under the contract has paid only the $700 on delivery of the agreement, and $402.50 since by the cutting of shingles under the same; that he manufactured some 725,000 shingles in the months of December, 1882, and January and February, 1883, but such shingles were so poorly and improperly manufactured that the complainant refused to apply the 25 cents per thousand towards the payment of said mill, and that there was also wasted by said Clark about $300 worth of timber in these same months; that said Clark on February 14, 1883, refused to manufacture any more shingles according to the terms of said contract, although the complainant kept the said mill stocked with pine logs in accordance with the terms of said contract; that on August 10, 1883, said William A. Clark recovered a judgment against complainant in the circuit court for the county of Wexford for $743.19, including costs, on account of the said shingles so manufactured in the said months of December,

January, and *February*, and that a suit is now pending in the same circuit court between said Clark and the complainant, in which Clark claims pay for shingles manufactured in these same months; that Clark is financially irresponsible, and that whatever is due him for the cutting of shingles, whether merged in judgment or not, should be applied in payment of the balance due complainant upon the mill, and that the mill property, upon which she claims a lien for the purchase price of the mill, is a slender and insufficient security for the same.

That the defendant Robert Ballard is now operating said mill, manufacturing about 35,000 shingles per day; that he is paying William A. Clark or the defendant Emma C. Clark (who claims to own said mill) the sum of 19 cents per thousand on his cutting, for the use of said mill; that the defendant Adam J. Clark claims to hold a mortgage upon the said mill property, executed by said William A. Clark, which the complainant avers must be considered and held as a subsequent incumbrance, as far as her lien is concerned. She prays for a foreclosure of her lien, and an injunction restraining Ballard from paying anything for the use of said mill to either of the Clarks. This bill was filed December 18, 1883.

The defendant William A. Clark answered, denying that the contract was made for the purpose of securing the payment of the sum to be paid for the mill, or to constitute any lien or incumbrance on the same; avers that he stopped the manufacture of shingles under the contract because the husband of the complainant, and her agent, Levi O. Harris, positively refused to stock the mill any longer; that when he so refused, on February 15, 1883, there was due from complainant to said Clark the sum of $675 for shingles cut before the 1st of that month; and that for that amount and interest thereon

74 Mich.—22.

he recovered the judgment mentioned in complainant's bill. He avers that the suit then pending and mentioned in complainant's bill is for shingles cut in February; that all the shingles cut by him were properly manufactured, and that the claim that they were not properly manufactured was made and litigated in the first suit at law, and decided against the complainant, which judgment stands as a valid one, no appeal having been taken therefrom. He further avers that he has been at all times willing and ready to perform his part of said agreement. He admits that he sold his interest in said mill to Emma C. Clark, September 2, 1883, and that she afterwards leased the same to the defendant Ballard. Defendant Emma C. Clark also answered.

Adam J. Clark, it seems, was found to have no claim upon the property, and asserted none, having assigned his mortgage to Emma C. Clark before the commencement of this suit.

The testimony was taken in the cause before a circuit court commissioner, and is quite voluminous; the evidence and proceedings in the suit at law being incorporated therein, and made a part thereof. Upon the hearing, the circuit judge, Hon. Silas S. Fallass, found that the agreement was given for the purpose of securing to the complainant, by creating a lien upon said property, the payment of the sum of $1,800, the unpaid portion of the purchase price of the personal property mentioned in the contract, to wit, the shingle-mill, machinery, etc., and also for the purpose of securing $75 for insurance paid by complainant upon the property; and that it was in force and effect a chattel mortgage, and that William A. Clark had made default in the payment of the same; that he placed it beyond his power to carry out the agreement; that there was due on the contract on December

5, 1884, and unpaid, the sum of $1,150.09; that Clark has allowed the property to depreciate, so that it is insufficient security for said lien, and that he is irresponsible; and therefore decreed that the judgment obtained by Clark against complainant for the sum of $743.29 be set off and applied towards the payment of the said sum of $1,150.09.

William A. Clark, Emma C. Clark, Adam J. Clark, and Robert Ballard, and all persons claiming under them, were decreed to be barred from all equity of redemption in the property, and the complainant authorized to take possession of the same, or so much thereof as should be necessary to satisfy the sum of $390.37, with interest upon the same from December 5, 1884, being the amount found to be due the said complainant after deducting the aforesaid judgment, and interest thereon, from the original amount found due to her. The complainant was empowered to sell the said property at public sale after six days' notice, and out of the proceeds of the sale to receive the amount due her, and the cost of the sale. If any money was realized over and above such amount, it was to be paid to the defendants; if not enough was obtained from such sale to pay the complainant, it was decreed she should have execution for the balance. The defendants appeal.

The amount of $1,150.09 found due by the circuit judge from William A. Clark to complainant was ascertained, as would appear from the proofs, in this way: Levi O. Harris, husband of complainant, who managed her business with Clark, testified that he credited on the contract the entire cut of shingle up to and including the month of November, 1882, and that there was left a balance due to complainant of $1,630.09; that this sum included damages claimed at $480. The circuit judge obviously did not allow this damage, and, deducting it, would leave

remaining $1,150.09. It seems, also, that he did not allow Clark anything for the shingle cut in February, 1883, and probably made an even offset of the damages claimed for that month against the amount earned by the cutting of the shingle.

A careful examination of the testimony in the record satisfies us that the shingles cut by the defendant Clark were properly manufactured under the contract, and that there was no refusal of the defendant William A. Clark to manufacture shingles under the contract and in accordance therewith; that the trouble in this case grows out of the fact that the complainant claimed, without cause, that the shingles were not being properly manufactured, and refused to furnish any more pine timber with which to stock the mill. Consequently the defendant was not in default when the bill was filed in this cause, and never had been, considering the agreement to be in the nature of a lien or chattel mortgage upon the property for the payment of its purchase price. And this matter of the manufacture of the shingle for all the months of December, January, and February was gone into and litigated in the suit at law in which Clark recovered judgment against complainant. In that suit Clark was suing for the 85 cents to be paid to him out of the $1.10 per thousand for the shingle cut in December and January, and the complainant endeavored in her defense to recoup for the damages from defective cutting and packing of the shingle, not only for those months, but also for February, and also for the timber claimed to be wasted in such cutting. The jury found against her whole claim, evidently, and we think rightfully. They also found specially, in answer to questions put by complainant's counsel, as follows:

"1. Were the shingles manufactured, for which the plaintiff seeks to recover, merchantable shingles?

"Our answer is, 'Yes.'

"2. Were the shingles cut by the plaintiff in the months of November, December, and January merchantable shingles?

"Our answer is, 'Yes.'"

This ought to be and is, as far as the cutting of these three months is concerned, *res adjudicata*. And the record of the trial of the suit at law shows that the circuit judge instructed the jury to find a certain amount for the plaintiff, unless they allowed a deduction for damages on account of defects in the manufacture and packing of the shingles, and that they could deduct from such amount the damages, if any were found, for the defective or improper manufacture or packing of the February cut. The jury found a general verdict for the amount stated by the court to be due, without any deduction for damages.

It appears from the evidence upon the trial at law, without dispute, that the defendant William A. Clark, up to February 1, 1883, a period of five months, manufactured 2,496,000 star and second shingles under the contract, which would be a credit of $624 upon the contract, nearly $125 per month. At this rate the defendant Clark, if the mill had been stocked by complainant in accordance with the agreement on her part, would have paid in full for the mill in 10 months more, or by December 1, 1883, and before this bill was filed. It would seem that the complainant was wholly at fault as regards the performance of this contract. The evidence fails to show that any complaint was made by complainant or her husband in regard to the manufacture of the shingles until February, 1883, and the evidence is also conclusive that the shingles cut in that month were properly manufactured and packed, except one or two bunches.

Whether or not this contract can be regarded as a lien

or mortgage upon the property for the payment of the purchase price of the same, there was no default in the agreement on the part of the defendant Clark, and no default in the payment under the contract, save that which was occasioned by the refusal of the complainant to permit its payment in the manner prescribed by the agreement. It follows that the complainant had no right to file her bill when she did, and therefore cannot maintain the same. There may be something due her upon the purchase price of the property over and above the damages to which the defendant Clark may be entitled for her refusal to perform her agreement, but the pleadings in the present suit are not such as to permit us to determine the equities between the parties, as the defendant Clark in his answer did not pray any relief; relying, as he had a right to, on the fact that the complainant had no right at that time to foreclose her lien upon the property, if any such lien existed. We shall therefore leave the parties where they were at the beginning of this suit.

The bill of the complainant must be dismissed, without prejudice to any further attempt in a proper manner to adjust the equities between her and the defendant William A. Clark, and the decree of the court below will be reversed and vacated, with costs of both courts to defendants.

The other Justices concurred.