## Sutton's Estate.

*Contract—Payment for improvements—Measure of value—Interest.*

The son and executor of decedent being indebted to the estate for a farm sold him by his father on credit, an agreement was entered into between the son and the other executor and such heirs and residuary legatees as had attained full age, for return of the farm, the contract providing that the aggregate amount of the value of the improvements should first be allowed and paid to the son before distributing the proceeds arising from said lands among parties hereto under the will, etc. *Held,* That payment of the allowance for the improvements was not limited to the premises upon which the improvements had been placed nor to the proceeds of the premises if sold, but is a debt due by the estate and payable out of the fund for distribution; but the estate being solvent and the executor having neglected for years to pay himself the debt or the current interest thereon, a credit for the interest cannot be allowed in the absence of positive proof showing the necessity for deferring the payment of principal and interest.

*Evidence—Unexplained interlineation—Admission of document—Appeal.*

When it appears from the record that a document containing an unexplained interlineation is offered in evidence without objection, the appellate court is warranted in assuming that the appellants had opportunity for examination of the document or that they were willing to admit it in evidence without examination.

*Measure of valuation of improvements—Contract.*

The agreement in this case permitting re-entry upon the real estate upon certain conditions, among them payment to vendee for all the improvements he has or may make thereon, the measure of valuation in settlement is the cost of the improvements and not the enhanced value of the land which is the measure applied in actions for mesne profits.

Argued Jan. 10, 1900. Appeal, No. 117, Jan. T., 1899 by Almira Sutton et al., guardian, and heirs and distributees, from the audit of the second partial account of Peter Sutton and Annie G. Shelley, executors of Silas Sutton, deceased, from decree of O. C. Luzerne Co., No. 704 of 1875 in distribution allowing claim of Peter Sutton as a creditor. Before RICE, P. J.,

BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCH-ELL, JJ. Reversed. Opinion by W. W. PORTER, J., Concurring opinion by W. D. PORTER, J. BEAVER, J., concurs.

Exceptions to audit. Before DARTE, P. J.

The facts sufficiently appear in the opinion of the court.

The following exceptions were presented by Mrs. Almira Sutton:

[1. The court erred in not holding, that by the terms of the contract of October 9, 1878, between Peter Sutton and G. W. Biesecker, et al., Peter Sutton's claim for improvements amounting to $3,168.75 was restricted in its collection to the land in said contract described, or the money arising from the same.] [1]

[2. The court erred in allowing interest upon said claim for improvements from the date when the appraisement was made, to wit: October 18, 1878, instead of allowing it from the date when the claim became payable, to wit, upon "division of said premises or the money arising from the same."] [2]

[3. The court erred in allowing the value of the improvements to be fixed by an appraisement made ex parte, without notice to or attendance by any of the parties in interest except the claimant.] [3]

[4. The court erred in allowing the claim for improvements to share in the distribution of the fund in court.] [4]

Bruce S. Sutton et al. filed the following exceptions:

[1. The court erred in giving effect to the contract of November 23, 1872, between Silas Sutton, vendor, and Peter Sutton, vendee, without proof that the material interlineation "after paying the said Peter Sutton for all the improvements he has or may make thereon" was made before execution.] [5]

[4. The court erred in admitting evidence of what the improvements were worth instead of requiring evidence of the enhanced value of the land by reason of the improvements.] [8]

[8. The court erred in allowing interest upon the claim for improvements, thus enabling Peter Sutton, an executor of the estate, to keep a claim against a solvent estate on interest for nearly twenty years merely by withholding presentation of the claim.] [10]

The court dismissed the exceptions to the audit and confirmed decree of distribution. Almira Sutton et al. heirs and distributees, appealed.

494 SUTTON'S ESTATE.

Assignment of Errors—Opinion of the Court.  [13 Pa. Superior Ct.

*Errors assigned* among others were (1–4) in dismissing exceptions of Mrs. Almira Sutton, reciting same.  (5, 8, 10) In dismissing the first, fourth and eighth exceptions of Bruce S. Sutton, reciting same.  (12) In allowing interest upon the claim of Peter Sutton.

*John E. Jenkins* and *Henry A. Fuller*, for appellants.—Enhanced value of the land by reason of the improvements is the measure of the value of the improvements: Noble v. Biddle 81* Pa. 430.

The allowance for the improvements should be measured by the benefit to the land which the true owner received : McMurray v. Day, 70 Iowa 671 ; Thomas v. Quarles, 64 Tex. 491.

Testimony to the value of the improvements and not to the increase to the value of the land by reason of the improvements should be disregarded: Fisher v. Edlington, 85 Tenn. 23.

Even if the claim be held good, and the measure adopted equitable, the allowance of interest is unconscionable.  Though the law requires from executors only ordinary prudence and skill, it requires the utmost good faith.  Duty and interest must not be allowed to conflict.  And the acts of one holding a fiduciary relation will be scrutinized with great care to prevent improper use of his trust.

That Peter Sutton used his position as executor to his own profit and to the estate's loss in this matter cannot be doubted. It may be conceded that as creditor merely, had he been a stranger, he was under no obligation to pursue his debtor and demand payment if satisfied with the security; but as the representative of the debtor, the estate, it was his highest duty to conserve its interest, and promptly to pay all payable interest bearing claims against it unless its funds could be more profitably employed.

*S. J. Strauss*, with him *Geo. K. Powell*, for appellee.—The original promise to pay for the improvements was the promise of the father and, therefore, binding upon his whole estate.

OPINION BY WILLIAM W. PORTER, J., April 23, 1900 :

The decedent sold a farm on November 23, 1872, to his son, Peter Sutton.  The contract was a sealed writing.  The terms

of the payment were " one half payable one year after the de-
cease of said Silas Sutton, and the balance two years thereafter,
with interest payable annually if called for, otherwise no inter-
est to be paid during the natural life of the said Silas Sutton."
The contract further provided, " that if at any time and as
often as any instalments of principal and interest, under this
contract, shall become due and remain unpaid for the space of
thirty days, the whole amount of purchase money, above named,
shall, therefore, become due and payable, and the said party of
the first part and his legal representatives shall be thereupon
entitled to re-enter and take possession of said land and prem-
ises, after paying the said Peter Sutton for all the improvements
he has or may make thereon." Silas Sutton died December 21,
1874, leaving a will dated August 16, 1873, appointing his son,
Peter Sutton, and his daughter, Annie G. Shelley, executors.
The will directed the executors to apply the income of the es-
tate, and as much of the principal as necessary, to the support
of the decedent's wife, and directed that no division of the es-
tate should be made until her death. She died October 14,
1896. The residue of the estate was given and devised, one
fifth to each of three children ; one fifth to the wife and chil-
dren of the decedent's son, Ira G. Sutton; one fifth to the
decedent's grandchildren, Ira T. Beisecker and Anna E. Bei-
secker, children of Lydia, deceased daughter of the decedent.

No part of the purchase money for the farm was paid by
Peter Sutton. On October 9, 1878, all of the owners of the
residuary estate of Silas Sutton (except the children of Ira G.
Sutton, who were then minors or unborn), executed an agree-
ment with Peter Sutton, allowing him to surrender the farm
under the terms of the first agreement, by which the contract
was made forfeitable for nonpayment. Thereafter, the farm
was treated as part of the estate of Silas Sutton, and Peter
Sutton, as executor, as found by the court below, has accounted
for its proceeds.

In the rescission of the first contract, Peter Sutton agreed to
pay legal interest on the purchase money of the farm from the
death of his father to October 9, 1878, the date of the contract
of rescission. In the original contract of sale there was, as we
have seen, a stipulation that on a forfeiture Peter Sutton
should be paid for any improvements he might have put upon

the property. When the purchase was rescinded by the con-
tract of October 9, 1878, the amount of the improvements was
ascertained by three agreed, disinterested appraisers, who fixed
the amount at $3,168.75. This amount was not paid by Peter
Sutton or his coexecutor.

Within a few months after the death of the widow of the
decedent, the executors of the decedent's will filed an account,
and upon the audit of it the questions here to be determined
were raised. The appellants stand, in respect to the contro-
versy, in somewhat different positions. Almira Sutton, one of
the appellants, was a party to the contract of October 9, 1878.
Her rights must be considered separately from the rights of
the other appellants. By an agreement filed of record in this
court, it has been stipulated by all of the parties that the ap-
peal of Almira Sutton may be separately determined, and that
the appeal of Victor B. Sutton shall determine the rights of
the remaining appellants.

### THE APPEAL OF ALMIRA SUTTON.

The appellant is the wife of Ira G. Sutton. She and her
children take a one fifth interest in the residue of the dece-
dent's estate. Ira G. Sutton is the son of the decedent and is
still living. He joined with Almira, his wife, in signing the
agreement of October 9, 1878. She seems to be the only party
to that agreement who now objects to the construction put
upon it by the court below, save Annie E. Beisecker, who was
not of age when she signed the agreement. It is urged in
Almira Sutton's behalf that the court erred in allowing the
accountant the value of the improvements put upon the farm
by him and appraised under the provisions of the agreement
of October 9, 1878. The objection is that by the terms of the
agreement the value of the improvements was only to be col-
lected from the premises upon which the improvements were
put, and that the allowance was to be payable only when the
premises, or the proceeds of their sale, were divided. The
premises have not been sold or divided. They are still an asset
of the estate of Silas Sutton. The present account does not,
therefore, bring in the proceeds of the sale of the premises, but
does include some of the rentals. It is an account of the ad-
ministration of the estate of Silas Sutton upon which a distri-

bution can and, under the order of the court, will be made. The claim of the accountant is based on the terms of the agreement of October 9, 1878. We are of opinion that payment of the allowance for the improvements was not limited to the premises upon which the improvements had been placed, nor to the proceeds of the premises, if sold, but is a debt due by the estate and payable out of the fund for distribution. The language of the contract is that the aggregate amount of the value of the improvements " shall first be allowed and paid to Peter Sutton before distributing the estate of Silas Sutton or the proceeds arising from said lands among parties hereto under the will of said Silas Sutton." To say that the payment shall be made before distributing the estate is equivalent to saying that the estate is a fund out of which it may be made. It is true that the contract contains some phraseology upon which has been builded, by the ability of the counsel, an argument of some strength for a different interpretation. We have given the argument due consideration and are convinced that the conclusion reached by the court below and by us does not succumb to the assault. The learned court below was right in allowing the claim of Peter Sutton for the appraised value of the improvements.

The next question is whether under the contract the allowance for improvements should bear interest. Under the view we have taken of this contract, the appraised value of the improvements became a debt due by the estate of Silas Sutton from the date of the contract, October 9, 1878. The amount was ascertained. Peter Sutton was authorized to withhold the amount on any division of the premises or of the money arising from a sale of the same. He was authorized to deduct the amount from the general estate of the decedent before distribution. There seems to be no reason why he could not immediately have appropriated as executor the funds of the estate to the payment of this indebtedness. If this be so, why should he not receive interest? To this, it is answered, he should have paid the debt and thus tolled the running of the interest. The rejoinder is that under the terms of the will the whole estate was pledged for the support of the decedent's wife, the mother of the accountant. The filial relation may have been the motive for postponing the payment of the debt out of the

principal of the estate. There is no unbending rule which requires a trustee to pay off a debt where the creditor is not pressing. It may be, in some cases, for the manifest benefit of an estate that the debt should be carried for a time. There is, however, the obligation to pay current interest, since by its accumulation the whole corpus may be swept from the remaindermen. It cannot be inferred that the payment of the principal and the accumulating interest was postponed because of the needs of the beneficiary for life, who had both income and principal as her security. Such a state of facts must be proved and with great clearness, to justify such a course as that taken by the accountant here. While our eyes are not closed to the fact that the appellant alone of all the signers of the agreement of 1878 now complains, yet are we of opinion that error was committed in allowing interest on the claim in the absence of positive proof showing the necessity for deferring the payment of the principal and interest.

### APPEAL OF VICTOR B. SUTTON.

In this appeal the agreement of October 9, 1878, is to be disregarded. It is claimed that Peter Sutton, as executor, is not entitled to the allowance for the improvements put upon the farm, which he, as an individual, was under contract with his father to buy, because of a certain unexplained interlineation in the writing, which is of paramount importance. The contract was executed on November 23, 1872. The consideration was, as we have seen, payable one half one year after the decease of Silas Sutton, and the balance two years thereafter. It was provided that on the failure to pay any instalment of the principal or interest, the whole amount of the purchase money should become due, and the vendor have the right of re-entry by summary proceedings of ejectment, or otherwise. In this clause of the contract was inserted by interlineation these words : " After paying the said Peter Sutton for all the improvements he has or may make thereon." The claim for allowance for the improvements is based on this injected clause. It is true that the party offering an interlined document in evidence and seeking advantage from the writing is bound to explain the alteration to the satisfaction of the jury : Jordan v. Stewart, 23 Pa. 249. The record of this case, however, shows that the

document was offered in evidence by the claimant without objection. It does not appear that proof of the execution of the contract was even required. We are warranted in assuming that the appellants had opportunity for examination of the document or that they were willing to admit it in evidence without such examination. It may even be, as alleged by the appellee, that the document itself had precedently been offered in evidence by the appellants themselves. This would seem to be the case from the portions of the record printed in the appellee's paper-book. At all events, the court below was sitting to determine facts as well as law. The record discloses no challenge when the contract was offered. We will assume that the court was satisfied of the bona fides of the contract as interlined.

The act of Peter Sutton in dealing with himself as vendee of the farm is attacked. He, by virtue of the provisions of the contract of November 23, 1872, agreed with himself that as vendee of the land he would relinquish his rights, pay $1,200 as interest on the unpaid purchase money up to the time of surrender; that as executor and trustee, he would make an allowance to himself, as vendee, of the appraised value of the improvements upon the property. All of the heirs sui juris seem to have been cognizant of his acts and to have joined in the agreement approving of them. There is nothing which stamps the transaction with bad faith. The method of appraising is objected to, but not its bona fides. The sale of the land was made by the decedent in his lifetime for a fixed price. Peter Sutton, as executor of the decedent's will, succeeded to the decedent's rights, inasmuch as the farm was no longer land, but personalty in respect to the decedent's estate. The land, on the breach of the contract to purchase, became a part of the decedent's estate and, under the terms of the will, chargeable with the trusts in favor of the widow. Peter Sutton, as executor and trustee, therefore, dealt with the land as personalty. He accepted a surrender from himself as vendee, and this he was with authority to do, being bound only to the exercise of good faith in the transaction.

While not alleging bad faith, the appellants assert that an erroneous valuation was permitted by the court to be made of the improvements upon the farm. It is claimed that the value

500                    SUTTON'S ESTATE.

Opinion of the Court—Concurring Opinion. [13 Pa. Superior Ct.

of the improvements should be measured by the enhanced value of the land. This is the measure applied in actions for mesne profits: Noble v. Biddle, 81* Pa. 430. But the language of the contract here warrants the measure of value adopted. Peter Sutton was, on re-entry being made upon the farm by the vendor or his legal representatives, to be paid "for all the improvements he has or may make thereon." It is not the value of the improvements. It is not the enhanced value of the farm. It is for all the improvements, which means the cost of the improvements. This is the method of valuation adopted by the appraisers and it is the measure approved by the court below.

In this appeal the right of the accountant to interest on his allowance for improvements is attacked. Holding, as we do, that the transaction of 1878 was in good faith an adjustment of rights after the breach of the contract of 1872, the allowance became a debt of the estate, independent of the written contract of 1878. What has been said in Almira Sutton's appeal, supra, applies to the matter of interest in this appeal. The accountant not having shown affirmatively the necessity for postponing payment of the principal and current interest on his claim, has, as against the remainder interests, estopped himself from collecting the accumulation of interest.

The decree of the court below is reversed, and the record is remitted with direction that distribution be made in accordance with the views herein expressed.

W. D. PORTER, J., concurring, April 23, 1900:

While concurring with the judgment of the court in reversing the court below as to the allowance of interest, I would go further and sustain the specifications of error as to the basis upon which the court below ascertained the value of the improvements for which Peter Sutton, the accountant, was allowed credit. When Peter Sutton, as executor, undertook to deal with the contract which the estate held against him as an individual, he was bound, as against these appellants, to the exercise of the utmost good faith. Under the terms of the agreement which he had entered into with his father, the estate had several remedies, any one of which it was at liberty to pursue; it might have brought suit against Peter Sutton for the purchase money;

it might, under the terms of the agreement, have caused a judgment to have been entered against Peter Sutton by confession, in the sum of $5,000, as authorized by the agreement; or it might, under the terms of the agreement, have re-entered and taken possession of the land, paying Peter Sutton for his improvements. The heirs who were of age joined with Peter Sutton in an agreement that the contract of their father should be canceled, and that all the parties to the said agreement of cancelation should take possession of the land: some of the appellants were at that time minors, did not join in this agreement of cancelation, and are not bound by it. The court below treated this as an entry upon the lands by the executor as representing the estate, and proceeded to value the improvements for which the estate was to pay Peter Sutton individually upon the basis of the cost of those improvements to Peter Sutton, and not of the value of the improvements to the land. If Peter Sutton was entitled to compensation for these improvements, that compensation ought to be regulated and determined by the increased value of the land because of the improvements, and was not dependent upon, nor to be increased by, his extravagant and unwise expenditures, which neither benefited the land nor the estate.

BEAVER, J., concurs.

A motion for reargument was subsequently refused in the following opinion.

Opinion sur petition for reargument.

OPINION BY WILLIAM W. PORTER, J., May 24, 1900:

The motion for reargument is based upon the allegations that in our former opinion we omitted to give consideration to the fact that Peter Sutton had been surcharged with interest on his debt to the estate and its bearing upon the claim for interest, to which we have held he was unentitled, on his claim against the estate for improvements to the farm. These matters received due consideration. The omission of any discussion of them in the opinion filed was not accidental.

From the order of the court below surcharging the debt of $1,200 and interest no appeal was taken. Peter Sutton there-

fore cannot now contend that the surcharge was illegal or improper. He now says however that having been so surcharged it is inconsistent to hold that he is not entitled to the interest to which we have found him unentitled. The two matters have not the same status before us. The liability to pay interest was determined by the court below. The right to receive interest has been denied by us. It may or may not be that in charging him with interest the court below was moved by its conclusion that he was entitled to receive as well as to pay interest. The liability of an estate to pay interest to an executor, and its right to receive interest from him are not determined by the same considerations. The reasons for our denial of the right to receive interest have been heretofore expressed. They have no reference to his liability to pay interest determined by the court below in a ruling to which no objection is made.

The petition for reargument is denied.