## Jordan *versus* Stewart.

1. Though the acknowledgment or probate of a deed is to qualify it for recording and to be used as evidence, yet an *ex parte* affidavit by one of the subscribing witnesses made after the deed had been recorded, endorsed thereon and alleging that an interlineation therein extending the covenant of warranty was made before execution and was made known to the grantors, was not admissible in an action of covenant between the parties to the deed founded on the warranty.

2. Though an agent may prove his authority his mere declarations are not evidence of agency on his part. Before his declarations are admissible his authority as agent must be established by other evidence.

3. The fact that a person in possession of a deed was the scrivener who wrote it and that he presented it for re-acknowledgment several years after its execution and after an interlineation therein became material, was not sufficient evidence of his being the agent of the grantee in so submitting it, and his declarations made at the time were not evidence of his authority as against the grantee.

4. When no disputed claim exists in relation to an interlineation in a deed or other written instrument, the presumption is that the alteration was made before execution; but when a contest exists and the instrument is offered in evidence and the alteration is beneficial to the party offering the instrument, it is not to be considered a forgery, but it is incumbent upon him to explain the alteration to the satisfaction of the jury. The burden of proof is upon him, and the question is for determination by the jury.

ERROR to the Common Pleas of *Delaware county*.

This was an action of covenant to May Term, 1851, by George Jordan against John Stewart, on a deed of conveyance by Stewart to Jordan, which, on the part of Jordan, the plaintiff, was alleged to contain a clause of general warranty, warranting the title to the lands conveyed.

On the 20th of June, 1834, John Stewart and wife conveyed to George Jordan a tavern house and tract of land in Delaware county for $2250. The plaintiff went into possession and continued to occupy till April, 1847, when an action of ejectment was brought by Mary Crawford and others on a title paramount to that of Stewart against Jordan, and a recovery had for four-fifteenths of the property conveyed. The judgment in this action was reviewed by the Supreme Court, and affirmed; and a *habere facias possessionem* executed. The plaintiff in this suit then purchased the adverse claim for $1000, paid the costs and counsel fees, and brought this action to indemnify himself for the loss sustained.

The defendant pleaded *non est factum*—denying that he gave a deed of *general warranty*.

The deed exhibited contained appropriate words of *special* warranty, with words interlined which converted the clause from a special to a general warranty. The words interlined were, " or any other person whatsoever." The defendant alleged that the

[Jordan v. Stewart.]

deed was altered by the interlineation after its execution. The plaintiff alleged that it was done *before* its execution. The evidence adduced on either side had relation to this question.

John L. Pearson, of Delaware county, a justice of the peace and a surveyor and conveyancer, wrote the deed, and was a witness to its execution. He died in 1842.

The deed was entered for record on the day of its date, and remained in the recorder's office at Chester for upwards of five years. It was taken from the office by Jordan, the plaintiff, in 1839, and soon after Pearson, by an affidavit endorsed on the deed and taken before a justice of the peace, alleged that he was present and saw the deed executed and delivered—that the interlineation in question was made by the affirmant in his proper handwriting, before the deed was signed by Stewart and wife, " and was made known to them." He further affirmed as to the handwriting of the grantors and the witnesses, of whom he was one. This affidavit, dated 25th November, 1839, was offered in evidence, and rejected. The *first* bill of exceptions related to the rejection of the affidavit.

The second bill related to the admission of testimony. The defendant called a witness to prove that John L. Pearson called at his house with the deed in question in 1838 or 1839, and that in conversation with Stewart, the defendant, he stated that he had been sent there *by Jordan,* to get the deed re-acknowledged by Stewart. The declarations of Pearson, thus alleged to have been made, were objected to; the objection was overruled, and the plaintiff excepted. The deed was not re-acknowledged.

The interlineation was not in *the record of the deed.*

It was testified by the person who recorded the deed, that *before* the affidavit of J. L. Pearson was put upon it, he, in company with Jordan, examined the record to ascertain whether the interlineation was on the record. Jordan insisted that the interlineation existed when the record was made. Jordan then said he had had the deed for two or three weeks—and said that there was some talk of commencing an action for the land, and he had come to see whether the words interlined were recorded. The witness further said the color of the ink of the interlineation was not different from that used on the rest of the deed.

Testimony was given of the good character of J. L. Pearson, the scrivener.

The plaintiff's counsel asked the Court to charge that the presumption of law is, that an interlineation in a deed was made *prior* to its execution and delivery; and that this presumption stands in place of proof till the contrary appears.

The Court charged the jury that in considering whether the interlineation in the deed was made before or after its execution, the appearance of the deed and of the interlineation, and all the circumstances relating to the transaction, together with

x 2

[*Jordan v. Stewart.*]

the character of the conveyancer, were proper subjects for their consideration. He observed that the interlineation was of material importance to the holder of the deed; and he refused to instruct the jury that the presumption of law was that the interlineation was made *before* the execution and delivery of the deed, and that such presumption stood in place of proof till the contrary appeared; but he referred the deed, and all the evidence relating to the interlineation, to the jury to determine whether it was made before or after the execution and delivery of the deed.

March 5th, 1853, verdict *for defendant.*

The rejection of the affidavit of J. L. Pearson, the subscribing witness, endorsed on the deed, was assigned for error. 2. The admission of the testimony as to declarations made by Pearson in 1838 or 1839, when he submitted the deed to Stewart for reacknowledgment, that in doing so he was acting at the instance of Jordan, the plaintiff. 3. In refusing to charge as was requested.

*Lewis,* for plaintiff in error.—It was contended that, by the Act of 1715, probate of a deed could be made by a subscribing witness. That it was evidence that the conveyance, as it existed when the proof was made, was the deed of the parties. That though such testimony has something of the character of *ex parte evidence,* yet every subscribing witness is regarded as agreed upon by the parties to the deed: 1 *Greenl. Ev.* 569; 6 *Hill* 305; 9 *Barr* 445.

2. There was no proof of the agency of Pearson. His declarations of themselves were not evidence of his agency: 2 *Whar.* 340; 3 *Id.* 40. Acts and declarations together, without some proof of antecedent authority or subsequent ratification, are not evidence: 1 *Yeates* 502; 4 *Ad. & E.* 53, Rutzen *v.* Farr. The mere possession of the deed by Pearson, without more, was not sufficient to implicate Jordan in his acts or declarations: *Story on Agency,* 87. No act was done by Pearson at the time. His declarations alone were offered that he was sent by Stewart, and the object of his mission, and they were inadmissible: 6 *Car. & Pay.* 669; 7 *M. & W.* 595. A new trial may be granted for the admission of improper evidence, notwithstanding there appeared to be preponderating evidence in support of the verdict: 4 *Ad. & E.* 53.

3. It was contended that the presumption of law was, that the interlineation was made before the execution of the deed. "A deed cannot be altered after it is executed, without fraud or wrong, and the presumption is against fraud or wrong:" 5 *Law & Eq.* 349; 1 *Metc.* 234; 20 *Verm.* 217–61; 9 *Barr* 187. The rule may be restricted to deeds and writings *not negotiable.*

*E. Darlington,* for defendant.—The affidavit of Pearson was *ex parte.* Jordan got the deed from the recorder's office, and the

[Jordan v. Stewart.]

presumption was that Pearson got it from him: 9 *Porter* 210; 2 *Greenleaf's Ev.* § 65. The presumption was not that the interlineation was made before the execution of the deed.

The opinion of the Court was delivered by

WOODWARD, J.—The grantee in a deed which has been duly acknowledged is at liberty, undoubtedly, to make probate of it by a subscribing witness. Under our Acts of Assembly both modes of authentication are open to him, and where for any reason one is not satisfactory, he may resort to the other; but the whole effect, whether of one or both, is to qualify the instrument to be recorded, and used as evidence. Still we are of opinion that the Court were right in rejecting the evidence of probate offered here, and which is set forth in the first bill of exceptions, for it was not necessary for either of the above purposes, and it contained statements in regard to the interlineation of which an *ex parte* affidavit could not be competent evidence. Duly executed and acknowledged by the grantors, and recorded, the deed was as effectually authenticated, without probate by a subscribing witness, as with it. The only motive for superadding the probate, after question had arisen on the deed, was, evidently, to secure the testimony of the subscribing witness in relation to the interlineation; but what he said on this subject was no necessary part of the probate, and as it was said *ex parte*, was no more competent on the trial than if it had been written in a voluntary affidavit, or anywhere else than the back of the deed. The facts he stated were competent, but the medium of proof, wholly incompetent, was properly rejected.

The ground on which the evidence of Pearson's declarations was admitted was his agency for Jordan. If Pearson went to Stewart to procure a re-acknowledgment of the deed at the instance of Jordan, and as his agent, his declarations in connexion with the execution of the mission would be competent as part of the *res gestæ*. Whenever the act of an agent is admissible in evidence, it is competent to prove what he said about the act while he was doing it.

But was Pearson Jordan's agent? There was no direct proof of it except the declarations objected to. An agent is competent to prove his own authority where it is by parol, but his declarations *in pais* are not proof of it; and though they become evidence, as part of the *res gestæ*, if made in the conduct of the business intrusted to him, yet other evidence must first establish his authority to speak, before his words shall bind his principal. Yet without such precedent proof, the Court admitted the declarations of Pearson, and gave them in charge to the jury without instructing them that unless the agency were proved Jordan was not responsible for them. Agency may be made out as an implication from circumstances, as well as by direct proof. Implied agencies

result often out of the relations of employer and employee, husband and wife, parent and child, counsel and client, partners and the less definite relations into which men are brought in the pursuits of business; but in all such cases it is a conclusion of fact to be deduced from circumstances by a jury, rather than assumed by the Court. Apart from Pearson's declarations we see no circumstances in proof from which a jury could reasonably infer his agency; yet, such as they were, they were not submitted for this purpose, but the Court assumed his agency, and accordingly admitted the declarations and submitted them without qualification to the jury. Herein was manifest error. If Jordan was to be prejudiced by Pearson's conversations, the authority to speak should first have been shown; or if the authority were to be deduced from circumstances, the jury should have been instructed to disregard the declarations until other evidence had persuaded them that authority had been given.

It is impossible for us to measure the influence of Pearson's declarations on the verdict; but as they constituted the main evidence of agency—all the direct proof there was of it—it is apparent that whatever effect the attempt to obtain a re-acknowledgment of the deed may have exerted in the jury box, was due to these declarations. The question in the cause was whether the interlineation of words which constituted a covenant of general warranty had been made before or after execution of the instrument, and the defendant was permitted to show that a person calling himself an agent of the plaintiff, applied to him to re-acknowledge the deed four years after he had executed and acknowledged it, and just at the time when such a covenant was discovered to be important to the plaintiff. This may have proved a condemning fact, and should have been brought into the cause by legal and legitimate evidence. If Jordan sent Pearson, Stewart should have proved it. If he meant that the jury should infer it, some more decisive facts should have been furnished as the ground of presumption than that Pearson was the scrivener who drew the deed, and that four or five years afterward he presented it for re-acknowledgment. The one of these facts was calculated to explain the other; for how natural that a scrivener, when his omission to note an interlineation had come to light, and was likely to prove fatal to the rights of the grantee, should set himself about endeavoring to repair the mischief. Without further discussion of this point, having indicated the grounds on which we think there was a mistrial, we pass now to a consideration of the error assigned to the charge.

The plaintiff called on the Court to say that the presumption of law is that an interlineation in a deed was made prior to its execution and delivery; and that this presumption stands in the place of proof till the contrary appears. The Court treated this as an abstract proposition, which they declined to answer, but submitted all the evidence

[Jordan v. Stewart.]

in the cause to the jury to say "whether the presumption is one thing or the other."

When we look at a written instrument containing an interlineation or erasure, without reference to contested rights, the natural and fair presumption doubtless is that the alteration was made before signature, because if altered after execution, it would be forgery, which is never to be presumed. Instruments of writing, executed with the solemnities appointed by law, are, like the men who made them, to be presumed innocent until some circumstance is shown to beget a counter presumption. But when a contest occurs, and the instrument is offered in evidence, the question at once arises whether the alteration is beneficial to the party offering it; if it be not, as in the instance of a bond or note altered to a less sum, the *primâ facie* presumption is unchanged; if it be, as was the case here, we do not presume a forgery, but we hold the party offering it in evidence and seeking advantage from it, bound to explain the alteration to the satisfaction of a jury. The initiative and the burden of proof are thrown on him. If the interlineation or erasure have been noted in the attestation clause as having been made before signature, this is sufficient; or if the similarity of ink and handwriting, or the conduct of the parties, or other facts proved, shall persuade a jury that it was so made, the instrument is relieved from suspicion, and the party offering it is entitled to the benefits of it. So long as any ground of suspicion is apparent on the face of the instrument, the law presumes nothing, but leaves the question as to the time when it was done, to be ultimately found by the jury upon proofs to be adduced by him who offers it in evidence: 1 *Greenleaf*, pl. 564. It was once decided in Pennsylvania by Chief Justice McKEAN, that an alteration should be presumed to be made *after* the execution of the instrument: Morris *v.* Vanderen, 1 *Dal.* 67; but this is a harsh rule, and has not been followed. Our books contain a series of cases that settles that where a bond, deed, or any other instrument is offered with an interlineation or erasure that is material, it is a question for the jury on all the circumstances, whether the alteration was made before or after signature: Stahl *v.* Berger, 10 *Ser. & R.* 171; Babb *v.* Clemson, *Ibid.* 424; Barrington *v.* Bank of Washington, 14 *Ser. & R.* 422; Heffelfinger *v.* Shultz, 16 *Ser. & R.* 46; Hudson *v.* Reel, 5 *Barr* 279.

In the case in hand there were important facts in evidence bearing on the fairness of this very material interlineation. On the one hand was the fact that the record copy of the deed did not contain the interlined words; on the other the resemblance which these words bore to the body of the deed, both as to ink and chirography. Beside these, there were various other circumstances tending more or less to impeach or establish the instrument. To have affirmed the plaintiff's proposition, in view of such evidence,

VOL. XI.—32

would have been to assert a mere abstraction, instead of taking a step towards the decision of the issue. Although the Court might properly have developed the law of the case more fully than they did, we think there was no error in referring the evidence to the jury on the question whether the interlineation was made before or after the execution of the deed; but for submitting Pearson's declarations as part of the evidence, the judgment is reversed and a *venire de novo* awarded.