LANSING *v.* MICHIGAN CENTRAL RAILROAD CO.

1. JUDGMENTS—CONCLUSIVENESS—MATTERS CONCLUDED.

On the issue of what question was litigated in a former suit, in which, for some reason not shown by the judgment, a verdict was directed, resort may be had to the record to show why the court directed the verdict, and what was the issue upon which direction was made.

2. SAME.

A judgment for defendant in a personal injury case in which the only question decided was that plaintiff could not, while still an infant, disaffirm her previous settlement of the cause of action, is not an adjudication of her right to repudiate the settlement and maintain an action for the injury after she becomes of age.

3. INFANTS—AGE—EVIDENCE—SUFFICIENCY.

In an action for personal injuries, evidence as to plaintiff's age at the time of executing a settlement with defendant examined, and *held*, that a finding that she was an infant was contrary to its overwhelming weight.

4. TRIAL—CONDUCT OF COUNSEL.

Where plaintiff in a personal injury case sought to avoid a previous settlement thereof on the ground of infancy, the conduct of her counsel in charging fraud in its procurement in his opening, of which there was no evidence, in persistently introducing testimony showing how the settlement was made between her and her attorney, notwithstanding repeated objection and exception from opposing counsel; and in offering hearsay evidence of her age after it had been ruled out, *held*, so prejudicial in a close case as to require reversal of a judgment for plaintiff.

5. WITNESSES — CREDIBILITY — IMPEACHMENT — EVIDENCE — AT-TORNEY.

Evidence of specific charges of criminal conduct, and findings thereon, in proceedings for the disbarment of an attorney, are admissible to impeach him as a witness.

Error to Monroe; Lockwood, J. Submitted October 5, 1905. (Docket No. 8.) Decided February 26, 1906.

Case by Edith Lansing against the Michigan Central Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Reversed.

This case involves the same accident and liability for alleged negligence as the companion cases, *Sarah A. Whipple* v. *Railroad Co.*, ante, 41, and *Sarah O. Whipple* v. *Railroad Co.*, ante, 47. The liability of the defendant for negligence depends upon the same facts as are involved in those cases and is ruled by them. In December, 1899, plaintiff, through her attorneys, Look & Humphrey, brought suit against the defendant to recover damages for injuries received. The suit was brought in her own name as an adult. On May 25, 1900, she settled the case with the defendant through her own attorney, Mr. Look; Mr. Ashley Pond acting for the defendant. The agreement was in writing and is set forth in full in 126 Mich. 663. At the same time she signed an order, directed to the treasurer of the defendant, authorizing and requiring him to pay the amount to her attorney, William Look. Both these papers were executed in the presence of three witnesses. The money was paid to Mr. Look and the suit discontinued. Afterwards she brought a second suit by her next friend, through Mr. Ira G. Humphrey, her attorney, representing that she was an infant. The declaration in the second suit made no reference to her former suit and the settlement. To the declaration in the second suit the defendant pleaded the general issue and gave notice of accord and satisfaction, and that she was at the time of the age of 21 years. At the conclusion of the second suit the court directed a verdict for the defendant, and judgment was entered thereon; the judgment reciting that "the jury heretofore impaneled in this cause, and after further proofs and allegations of the parties in part, the jury without leaving their seats under the direction of the court say," etc. There was a conflict in the testimony as to her age at the time of the settlement and at the time of

143 MICH.—4.

bringing the second suit. The record in that suit after the close of the testimony recites:

"Thereupon counsel for defendant moved the court to direct a verdict for the defendant. Thereupon the court. directed the jury to render a verdict for the defendant, because plaintiff was not of age on her own showing when the settlement was made and this suit instituted and was still a minor; and, if she was of age at the time of settlement, then such settlement is a bar to this suit, to which ruling counsel for plaintiff duly excepted. Upon which is based assignments 1 and 5."

That case was brought to this court for review and the judgment affirmed. 126 Mich. 663. It was claimed that the plaintiff had disaffirmed the contract of settlement, and that she could do so when an infant. The record in this case contains what was said by counsel and the court in directing a verdict for the defendant in the former suit;

"*Mr. Russel:* The defense is called upon to meet three propositions:

"*First.* As to the age of plaintiff. If it be found that the plaintiff was of age at the time of this adjustment to which she testified, that would be the end of this case.

"*Second.* There is a question as to the signature and execution of this paper.

"*Third.* If these two questions were out of the case, there remains a third question as to the liability of the defendant for the accident which caused the injuries, and as to that we have a large amount of testimony. In order to save time, it is proposed by the defense that the first question be disposed of at this point.

"It is contended by the plaintiff that she was not of age when she made this contract. This was an executed contract. It is contended that she is not bound by it because she was a minor. Suppose that under the laws of Michigan such a contract was made by a minor, then it is a voidable and not a void contract, and it cannot be avoided by her. It cannot be repudiated by her act until after she arrives at maturity. Taking the plaintiff's evidence, and admitting that it is true, it appears that she was not of age, yet, that being so, it is beyond her power, in any way, to repudiate that contract, not having attained maturity. There is no question about this under

the rulings of the Supreme Court of the State of Michigan. If it be said that she was of age, then she cannot repudiate it, under her own testimony, having signed it and ratified it.   For these reasons we move to direct a verdict for the defendant.

"*The Court:* The rule which has been invoked by the defendant is a technical rule.   It is a technicality, and I rather regret that it is in the case. _ I would prefer that the case should go to the jury upon its merits, but the rule is invoked and it is the privilege of the defendant to insist upon it.   I do not see but that the law of the State as pronounced by the Supreme Court recognizes the right of the position taken by the defendant in this case.   The question in the case can be reviewed inexpensively if we stop at this point, and I think it would be better for all parties than to go on with this question in the case.   I shall therefore direct a verdict for the defendant.

"*Mr. Humphrey:* The court grants this motion.   This is a case that has been properly begun by next friend, and I would not like to have anything done which would work an estoppel to beginning suit after the plaintiff becomes of age.   If the court puts the decision upon the ground that this can be affirmed after the minor becomes of age, but not before then, we will have an understanding about it.

"*The Court:* I put it upon this theory : That according to plaintiff's own showing she was a minor when she made this contract and is still a minor, and I hold that, under these circumstances, she cannot recover.   On the other hand, if, as the defendant claims, she is of age, then she has entered into a legal contract which stops her in this action.

"*Mr. Humphrey:* There is some evidence that she is of age now.

"*The Court:* The plaintiff must stand or fall upon the position she takes, and so must the defendant.   She must recover either upon the theory of the plaintiff or according to the theory of the defendant.   She cannot recover according to her theory.

"*Mr. Humphrey:* Simply because she brought suit before she was of age ?

"*The Court:* Yes; or, if she is of age, this settlement is a bar to her recovery.

"*Mr. Baldwin:* All we want is to show that this is not a direction for a verdict upon the theory that it is an estoppel.   We would like a further direction that the plaintiff must bring this action after she is 21.

"*The Court:* That is the ground upon which I direct a verdict; that is just the theory upon which Mr. Russel asks to have it taken from the jury.

"Thereupon the court directed a verdict."

This does not appear in the bill of exceptions in the former suit. The declaration in this case is the same as in the former suit, except as to the allegation of infancy. The defendant pleaded the general issue and gave notice of the former suit as a bar. The case was submitted upon the evidence, and a verdict rendered for the plaintiff for $2,500, less the $750 paid upon the settlement.

*C. A. Golden* and *George E. Tegart* (*O. E. Butterfield* and *Henry Russel* of counsel), for appellant.

*Ira G. Humphrey* and *Willis Baldwin*, for appellee.

GRANT, J. (*after stating the facts*). 1. The pleadings show three issues. The declaration presents the issue of the negligence of the defendant as a ground of liability for the plaintiff's injury. The plea presents the issue of accord and satisfaction, and the age of the plaintiff. The question of accord and satisfaction was eliminated from the consideration of the jury, because it was admitted that the agreement was executed. It was binding upon her as held by the trial court in that case and by this court upon appeal until she became of age. No issue of fact was passed upon by the jury. The merits of the plaintiff's claim in her declaration clearly were not adjudicated. Plaintiff was properly in court. Any judgment rendered upon the suit is as binding upon her as it would have been upon one sui juris. The very purpose of appointing a next friend or guardian ad litem is to put the infant or incompetent in court where his rights can be adjudicated, and, if adverse to him, the judgment or decree will bind him for all time as would a decree in his favor against the party sui juris. What was the question litigated in the former suit, and which is now res judicata? The judgment is not in the usual form. The usual recital in a

judgment based upon the verdict of the jury is "after hearing the proofs and allegations," etc. The recital in this judgment shows that there were only proofs and allegations of the parties in part. For some reason, which is not shown by the judgment, a verdict was directed. It is certainly competent under the repeated decisions of this court to resort to the record to show why the court directed a verdict, and what was the issue upon which direction was made. *Bond* v. *Markstrum,* 102 Mich. 11, and authorities there cited; *Aldine Manfg. Co.* v. *Barnard,* 84 Mich. 632; *Harris* v. *Clark,* 74 Mich. 334; *Black* v. *Miller,* 75 Mich. 323; *McKinney* v. *Curtiss,* 60 Mich. 611. The record in the former case, and the opinion of the same case in this court, show that the only question passed upon in the former trial, and which was the basis of the judgment, is that the plaintiff was as incompetent to disaffirm her contract as an infant as she was to make it. Plaintiff insisted that she could disaffirm while an infant, while the defendant insisted that she could not. No issue of fact was passed upon by either the court or the jury. One question of law was passed upon, and that was, could she, under her own theory, maintain the suit? We think that her right to repudiate her contract and maintain a suit after she became of age was not adjudicated in that suit.

2. Defendant made a motion for a new trial, one ground of which was that the verdict was contrary to the overwhelming weight of the evidence. The only evidence of plaintiff's age was given by herself. In deciding the motion the court said only this:

" The question of whether the plaintiff was 21 years of age at the time of the settlement was fully and fairly submitted to the jury, and the jury found that she was not 21 years of age."

The learned circuit judge did not discuss the evidence as to her age, or determine except indirectly where the great preponderance lay. Plaintiff testified that she ran away from home when she was 14 years of age. Under

her own testimony and admissions, she had been arrested several times as a criminal, and was a woman of immoral character. She did not produce the testimony of either her father or mother, although her mother was then living in Ypsilanti, a short distance from the place of trial, and her father was a resident of Bowling Green, Ohio. She brought her first suit as an adult. Her attorneys and the defendant dealt with her as an adult, settled with her and paid her $750 as an adult. Her attorneys, Look & Humphrey, certainly understood that she was of age. Mr. Ashley Pond, one of the attorneys for the defendant, settled with her upon that basis. She gave the following testimony:

"*Q.* How many times did you give your age in Detroit to the police officers?

"*A.* I don't remember that now. I remember giving my age once; but I don't remember of giving it to anybody else.

"*Q.* Didn't you give your age to the officers in Detroit on October 14, 1896?

"*A.* I don't remember what date it was.

"*Q.* And didn't you give it on April 19, 1897?

"*A.* I don't remember.

"*Q.* And on November 28, 1897?

"*A.* I don't remember; not that I remember of.

"*Q.* Were you not asked your age every time you was arrested in Detroit by the officers?

"*A.* Yes, sir; I guess I was.

"*Q.* You were, every time?

"*A.* Yes, sir.

"*Q.* How many times?

"*A.* I don't remember that. I don't remember how many times I was arrested in Detroit, or what age I gave at any time.

"*Q.* Do you remember whether you gave the same age each time, or did you give a different age?

"*A.* That I don't remember.

"*Q.* Each time you were arrested in Toledo were you asked your age by the officers?

"*A.* Certainly.

"*Q.* They always did?

"*A.* I guess they did.

"*Q*. Didn't they have a book there and mark down what you told them ?

"*A*. Yes, sir; they marked down something.

"*Q*. How many times did they do that in Toledo ?

"*A*. I don't remember that."

She admitted having lived in Detroit and Toledo under two aliases.   She wrote a letter to her father, dated September 4, 1896, in which she said:

"I have been trying to think what to send Mable for a birthday present, as her birthday is the 30th of this month, and mine is the 24th.   Almost 19 years old, or is it 18 years ?"

The police officers in Detroit and Toledo testified as to her arrests, and produced their record of the age she then gave.   On these occasions she gave her age as 19, and she does not deny that she so told the officers.   Under these statements, she was more than 21 years of age at the time of the settlement.   Upon this point the preponderance of the evidence is so overwhelming in favor of the defendant that we think the court should have granted a new trial.   It would seem that a jury must, in some manner, have been prejudiced in finding that she was not 21 years of age at the time of the settlement.

3. Counsel for plaintiff were guilty of misconduct, which entitled the defendant to a new trial.   In opening the case to the jury one of her attorneys, Mr. Baldwin, charged that the settlement was procured by fraud.   Upon counsel for the defendant's excepting to such statement, her attorney, Mr. Humphrey, said:

"I presume it would not be fraud upon the part of your company to settle with a girl 19 years old, and that they had no right to—"

The court warned the attorney to confine himself in his statement to what he expected to prove by competent evidence.   The counsel still proceeded to charge fraud, and stated that when plaintiff arrived in Detroit from Toledo, in response to directions from her attorneys, she met Mr. Look and an agent or attorney of the defendant, that they

laid down a bunch of papers before her, and that she, relying upon Mr. Look's statement, signed the papers. There was no testimony of any fraud upon the part of the defendant in making this settlement. No attorney or agent for the road was present at the time she signed it. She testified that no one acting for the defendant was present. She had no interview with any agent or attorney of the railroad company in making the settlement. Counsel for plaintiff, against the objection and exception of the defendant, persistently introduced testimony showing how the settlement was made between her and her attorney, how much of the money paid she received, and stated that her attorney "was really acting as attorney for the railroad company." Plaintiff also testified that her attorney kept her all night in her room at the hotel, and would not let her go to the dining room for her meals. Plaintiff's counsel also offered to show that her father had stated to a third person what her age was. After the court had ruled this testimony incompetent her counsel immediately afterwards renewed the subject by asking:

"When John H. Macomb [her father] made any statement to you, was he under oath?"

Upon this being ruled out, counsel again stated:

"We wish to show that an attorney of the defendant was present at this time and asked this man, and obtained this information acting for the defendant."

The incompetency of the testimony offered is too clear to require argument. To hold that plaintiff's attorneys did not know it was incompetent would reflect upon their knowledge of the law. The damaging effect of such a course before a jury is apparent, and, it is fair to presume, accounts for the verdict. The sole question under the pleadings was the age of the plaintiff. There was no evidence and no attempt on the part of the plaintiff to produce any to show that the defendant was guilty of any fraudulent conduct. The relations between her and her attorneys, the representations they or either of them made

to her, the amount of money she received, and other like things, had no place in this suit, and should not have been mentioned. No reference should have been made to what transpired between her and her attorneys, as the defendant is in no manner responsible therefor.

4. As affecting the credibility of the witness Look, who was a witness for the defendant, plaintiff introduced in evidence the record proceedings taken for the disbarment of Mr. Look as an attorney at law, and the findings of the court thereon. We think the testimony was competent. A record of conviction is competent evidence to affect a witness' credibility. The charges of criminal conduct and the findings thereon were specific. This case does not fall within the rule of *Dickinson* v. *Dustin*, 21 Mich. 561, where no specific charge was made, and the attorney acknowledged some misconduct and resigned his license to practice law. What the misconduct was did not appear, and it was held not to be a record of conviction such as could be used in impeaching a witness.

Judgment reversed, and new trial ordered.

CARPENTER, C. J., and MONTGOMERY, HOOKER, and MOORE, JJ., concurred.