## Burke, Appellant et al., *v.* Harkins et al.

Argued February 5, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Frederic W. Miller,* for appellant.—Where a bond, deed, or other instrument is offered with an interlineation or erasure that is material, it is a question for the jury, on all the circumstances, whether the alteration was made before or after signature: Stahl v. Berger, 10 S. & R. 170; Nesbitt v. Turner, 155 Pa. 429; Robinson v. Myers, 67 Pa. 9; Burgwin v. Bishop, 91 Pa. 336;

Bowman v. Berkey, 259 Pa. 327; Sutton's Est., 13 Pa. Superior Ct. 492.

In the present case, defendants claim under the deed in its present form and are, therefore, the ones who present it in its present form in support of their defense based on their claim of title under the deed. They are, therefore, really the parties who rely upon the instrument in its altered form, and as the alteration is highly beneficial to them, the burden of proof as to the authenticity of the document rests on them: Franklin Trust Co. v. R. R., 222 Pa. 96.

A chancellor may not find facts without proof and must find facts established by the proofs: Hamilton v. Fay, 283 Pa. 175; Pa. Knitting Mills v. Bayard, 287 Pa. 216.

A deed after delivery is functus officio and no subsequent alteration, even by the grantee, can affect the title: Tate v. Clement, 176 Pa. 550; Bowman v. Berkey, 259 Pa. 327.

*O. K. Eaton,* with him *James Francis Burke, Chauncey Lobingier* and *Crawford Scott,* for appellees.

OPINION BY MR. JUSTICE SADLER, March 18, 1929:

Martin Burke was the owner of valuable real estate in the City of Pittsburgh, subject to certain liens. Executions were issued and the properties sold in the fall of 1914 to one Callahan. Efforts were made to preserve the interests of Martin, and an arrangement was perfected through Thomas Burke, Jr., a nephew and employee, with one Kaufmann, by which the ownership of the sheriff's vendee became vested in the latter, subject to an agreement by the terms of which the title was to be retransferred upon the performance of certain conditions. As a result of the understanding reached, Callahan deeded one tract directly to Kaufmann, and two tracts to Thomas, who in turn conveyed to the same person on February 15, 1915. The cash consideration of $22,500

required was advanced by Kaufmann, who drew the necessary checks to Thomas, endorsed in turn to Callahan, and the former paid in addition $137.45, which Kaufmann loaned him at the time, though subsequently reimbursed.

By the terms of the contract it was provided that if the sum loaned by Kaufmann, with compound interest, plus a bonus of $4,000 for his service, be repaid within two and one-half years,—a time subsequently extended by the parties,—from rentals, or the purchase price of any of the buildings deeded to him, a reconveyance should be made to Thomas Burke, Jr., who is the complainant in the present proceeding. The arrangement to carry through the transaction in the name of Thomas was made because of the then financial difficulties in which Martin found himself, his ownership having been divested by the sheriff's sale for a price much less than the real worth. In March, 1915, Martin was declared a bankrupt, and in the schedule filed the land sold by the sheriff was referred to, but stated as of no value, since the record title had passed to the sheriff's vendee, and through him to Kaufmann. Later, the interest in the license and liquor business, conducted in one of the properties here involved, was purchased from the receiver by Thomas.

From 1915 to 1919 the buildings were handled by the Kaufmann Realty Company, of which Kaufmann and his brother were at the time joint owners, but thereafter the former acquired the entire interest. The real estate firm collected the rents, and paid maintenance charges, including taxes, until a sale of one of the houses was effected. As a result a fund came into Kaufmann's hands in excess of the amount he had agreed to accept under the terms of the Burke agreement, which required, in such case, a reconveyance. On October 1, 1919, the holder of the legal title, and his wife, executed a deed for the remaining land, now in question, though the same was not acknowledged until the 22d. An adjustment

was then made in the presence of Martin and Thomas Burke, Jr., and a check for $11,395.03, representing the balance then due by Kaufmann was made out to the order of Thomas, immediately endorsed to Martin, who deposited it to his individual account. The deed for the unsold properties was at the time signed, sealed and turned over. It was later recorded, and a legal presumption of actual delivery to the grantee named therein followed: Kohn v. Burke, 294 Pa. 282. Thereafter the realty company collected the rentals, its books showing this to be on account of Martin Burke, and all of the checks drawn, except the first, were made to his order, delivered to and cashed by him. He made the leases to tenants, paid for all repairs, and, in so far as the testimony shows, satisfied the tax claims as they became due. At no time, until this bill was filed more than four years after Martin's death, did Thomas claim any ownership of the property involved.

On January 14, 1923, Martin Burke was murdered. The deed for the land, in which he was named as grantee, was found in his safe with other personal papers, and shortly thereafter recorded. In the same month Thomas applied for a license to conduct a liquor business in the building, swearing the owner was Martin Burke. It was not until May 16, 1927, that he asserted the title to be in himself, and filed this bill making such claim, in which the heirs-at-law of Martin, except complainant's mother, brothers and sisters, who were joined with him as plaintiffs in the proceeding, were named as defendants. His demand was based on the allegation that the deed from Kaufmann had in fact been made to him as grantee, and that his uncle surreptitiously secured possession of the paper, thereafter changing the name of the grantee so as to read "Martin." The court was asked to direct that the conveyance be reformed to accord with the true facts, and defendants be restrained from asserting any rights in the property. Answers were filed denying the above averments, and the case

was heard by a chancellor, who carefully considered all of the testimony submitted, later entering a decree nisi dismissing the bill. Exceptions filed were overruled by the court in banc, and from the final order this appeal was taken. The many assignments of error submitted here are directed to the admission of testimony to show the circumstances attending the parties, and the credibility of the witnesses called by plaintiff, and the findings of fact based thereon, as well as to the conclusions of law reached.

We deem it unnecessary to consider the complaints separately and in detail, as an examination of the record shows, beyond question, that a proper determination was reached. It may first be observed that the claim of plaintiff was based on alleged fraud of Martin Burke in causing the erasure of the name of Thomas as grantee in the Kaufmann deed, and substituting his own therefor. Where fraudulent conduct is alleged, as here set forth, the door is opened wide for the production of evidence to determine the true situation, and testimony is freely admitted explanatory of the transaction: Smith v. Smith, 294 Pa. 347. The findings of fact of the chancellor are controlling on us as if determined by a jury (Myers v. Ohio-Penn Gas & Oil Co., 294 Pa. 212), though, of course, there must be competent evidence to support them: Hamilton v. Fay, 263 Pa. 175. In determining this question, it must be remembered that the witnesses were present before the trial judge, and the credibility of their testimony is a matter on which he is best qualified to pass. In this case, the claim of plaintiff was dependent upon the statements of two persons. One was Kaufmann, whose own books and conduct justified the chancellor's conclusion that he either deliberately testified falsely, or was unintentionally in error. The other was Weil, an attorney who had acted for both Thomas and Martin Burke, presenting a large claim for services against the estate of the latter, and who had been disbarred for misconduct by both the Common

Pleas and Orphans' Court of Allegheny County. His evidence was found to be unworthy of credence, as to the material matters at issue, in view of the facts made to appear.

The first of these witnesses referred to testified that the name of Thomas Burke was written in the deed when executed, and handed to one or the other of the parties in the presence of both. He saw the check, then made out to Thomas, endorsed to Martin, and thereafter carried the rental account on the books of his company, as shown by an annotation thereon, for the benefit of the latter, and, with the exception of one check, drew all, until the death of Martin, to his order. No suggestion was made by him until then that Martin was not the true owner, and this assertion first appears in a letter to the administrator suggesting that his estate was not entitled to the rents, though he had been paying them regularly to the decedent until the time of his death. A careful examination of the entire evidence of Kaufmann, who, amongst other things, attempted to conceal facts appearing in his office records detrimental to plaintiff, as well as knowledge that he had received a bonus of $4,000 for carrying through the transaction, shows warrant for disbelief of his present statement as to the intended grantee of the property reconveyed.

With like reason the evidence of Weil was deemed untrustworthy. He had acted as attorney for both parties. His statement that Martin showed him the deed on the date of its execution and delivery, made out to Thomas, and asked him to alter it, which he refused, and that the same paper with the change made was then brought back to him, and kept with this knowledge in his safe for three years, though he was then acting as attorney for Thomas also, and was finally delivered to the decedent two days before his death, amongst whose papers it was found by the administrator, was, under the circumstances disclosed, properly rejected as incredible. As affecting the weight to be given his testimony, it was

proper for the court to consider that he had been guilty of such gross misconduct as to cause his disbarment by the Orphans' Court and Common Pleas of Allegheny County: Weiss v. London G. & A. Co., 285 Pa. 251; Lansing v. Michigan Central R. R. Co., 143 Mich. 48, 106 N. W. 692; Thoras's Est., 162 Iowa 237, 144 N. W. 7; People v. Dorthy, 156 N. Y. 241, 50 N. E. 800; 40 Cyc. 2612. Though the record of the disbarment proceedings was offered showing his dismissal, the objection to the reception of such testimony was placed on the ground that it did not show conviction of a crime. It may be that proof of the facts which caused his exclusion from further practice as an attorney, might have been objectionable if presented to a jury passing on the credibility of the witness (People v. Dorthy, 63 N. Y. Supp. 592), yet the evidence was here submitted to a chancellor only, and it appears that both the trial judge and the court in banc considered alone the fact that a final order of disbarment had been entered. See Liggett's Petition, 291 Pa. 109.

Evidence was offered by defendants to show that the deed was in Martin's possession at his house in 1920, and at that time his name appeared therein as grantee. His ownership of the property was recognized by Kaufmann until his death by collecting and paying the rents to him, and was asserted under oath in a judicial proceeding by Thomas himself when he applied for a liquor license in 1923, then setting forth in his petition that Martin was the owner. Indeed he never asserted the contrary until more than four years after the death of his uncle, when he filed this bill. The deed itself did show an erasure of the name as first typed, and the retyping substituting the word "Martin," but the court was plainly warranted in finding this was done by the stenographer when the paper was written and before removing it from the machine, and its actual execution and delivery by the grantors. This conclusion was justified by the testimony of the experts called, and is the

natural conclusion to be drawn from the evidence produced. Though the burden is upon one who produces an instrument, containing a material alteration which is to his benefit, to explain, the mere change in the writing does not make it inadmissible in the condition as presented: Davis v. Cauffiel, 287 Pa. 420. To vitiate it, such erasure and modification must be material (Com. v. Gutelius, 287 Pa. 441; Lee v. Newland, 164 Pa. 360), and made after execution and delivery to affect the rights of the one producing it: Franklin Trust Co. v. R. R. Co., 222 Pa. 96; Bowman v. Berkey, 259 Pa. 327.

"When we look at a written instrument containing an interlineation or erasure, without reference to contested rights, the natural and fair presumption doubtless is that the alteration was made before signature, because, if altered after execution, it would be forgery, which is never to be presumed. [Even when the question is in dispute] if the similarity of ink and handwriting, or the conduct of the parties, or other facts proved, shall persuade a jury that it was so made, the instrument is relieved from suspicion": Jordan v. Stewart, 23 Pa. 244, 249. To the same effect are Robinson v. Myers, 67 Pa. 9; Sober v. Moony, 48 Pa. Superior Ct. 92. "It was once decided in Pennsylvania that an alteration should be presumed to be made after the execution of the instrument (Morris v. Vanderen, 1 Dal. 64, 67); but this is a harsh rule, and has not been followed. Our books contain a series of cases that settles that where a bond, deed, or any other instrument is offered with an interlineation or erasure that is material, it is a question for the jury on all the circumstances, whether the alteration was made before or after signature": Jordan v. Stewart, supra, page 249. Here, the chancellor, acting as a jury, had warrant for determining that the name originally written in the deed was erased by the typist, and that of "Martin" substituted, on the same machine, before execution, and with his conclusion we agree. All of the facts in this case confirm such a conclusion, and we can-

not say there was error in so holding. In view of this determination, based upon facts, resting on competent evidence, it is unnecessary to consider the effect of the delay of complainant in seeking relief for more than four years after the deed was duly recorded with the name "Martin" appearing as grantee, a fact of which he was admittedly aware in 1923 when the safety box was opened by the administrator of the decedent, and its contents examined in his presence.

Without referring specifically to the forty-one assignments of error, all are overruled.

The decree is affirmed at the cost of appellant.