**GUMMED TAPES (PTY) Limited,**

v.

**Simon MILLER.**

No. 19472.

United States District Court
E. D. Pennsylvania.

Oct. 3, 1957.

W. Bradley Ward, Bancroft Haviland, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

Marvyn Gould, William T. Adis, Yaffe & Gould, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

In this contract action based on two letters dated August 18 and August 23, 1954, executed and delivered in the Union of South Africa, the plaintiff has filed a motion for summary judgment in reliance on the depositions of the Managing Director of plaintiff and of defendant. The letter of August 18 from plaintiff to defendant confirmed an agreement by defendant "to make us an allowance (on account of disputes concerning prior transactions) * * *, which allowance it is agreed amounts to 8800 Dollars. * * * We further confirm our Order No. B–28 for 100 (One Hundred) Tons (each 2000 lbs) of Kraft as per samples attached hereto at 8½ cents per lb F. A. S. New York." The aforesaid allowance will be made on this Order and may be deducted by our shippers from the amount due by us on this Order.

The first and third paragraphs of the letter of August 23 from defendant to plaintiff [1] read as follows:

"In connection with the 8800 (Eight Thousand Eight Hundred) Dollars allowance which we have given you we confirm that it has been agreed that we may pay this to you as to 4400 (Four Thousand Four Hundred) Dollars by way of an allowance against the One Hundred Tons of Paper ordered from us for immediate shipment (Your Indent B–28) and the balance of 4400 (Four Thousand four hundred) Dollars we agree to pay you against your next Order which will be for delivery early next year.

\* \* \* \* \* \*

"In the event that we are unable to ship the paper the allowance will nonetheless still be due to you."

The third paragraph of the letter of August 23 manifests an intention that the allowance was to be payable even if defendant was unable to ship the paper as specified in the contract.

Defendant was unable to make the first shipment of 100 tons according to the description in the contract [2] and the plaintiff finally cancelled the order on or before January 5, 1955 (Exhibit P–20).[3] Under these circumstances, plaintiff is entitled to summary judgment for $8,800, with interest at 4% from 1/5/55. Although defendant contends that the word "allowance" is ambiguous and he should be given an opportunity to produce parol testimony to show that an allowance by credit against orders placed

1. Both letters were approved at the bottom by the addressees (see P–4 to P–7, inclusive.

2. The end of the letter of August 18 contained this language:
"Specification: 50 Tons 70 g.s.m. guaranteed Mullen min:
 39 lbs per sq. inch.
 25 Tons 80 g.s.m. guaranteed Mullen min:
 45 lbs per sq. inch.
 25 Tons 100 g.s.m. guaranteed Mullen min:
 54 lbs per sq. inch.
Roll Widths : Equal Proportions 60" and 38"
Roll Diameters : 36"
Heavy Walled Cores : 2–3/4"/3" Internal Diameter—Wood plugs at both ends."

3. Defendant's letters saying that he was unable to comply with the Mullen requirements of the contract (Exhibits P–9 to P–15, P–19, and Deposition, pp. 58–9) and plaintiff's refusal to vary these requirements (Exhibits P–17, P–23, P–24, and Deposition, pp. 65, 102) continued for several months during the fall of 1954. Due to the placing of gum on the paper when it was under tension, the Mullen requirements were important to plaintiff (Deposition, p. 99). Defendant admits that the 100 tons called for in the August 18 letter were never manufactured (Deposition, p. 59).

with him was the type of allowance contemplated,[4] the undersigned finds no such ambiguity as justifies the alteration of the written contract by parol. The first definition for "allowance" given in 1 Bouv. Law Dict., Rawle's Third Revision, p. 181, is "A definite sum or quantity set apart or granted." The appellate courts in common law jurisdictions have frequently used the word in this sense. See DeRoche v. DeRoche, 1903, 12 N.D. 17, 94 N.W. 767, 770;[5] Brosius Homes Corp. v. Bennett, 1953, 202 Md. 433, 96 A.2d 612, 616.[6] Although the word "allowance" may be used to mean an offset or credit against an order, the last sentence of the letter of August 23 makes clear that the $8,800 was to be due "in the event that we are unable to ship the paper." Since it was abundantly clear by January 5, 1955, that defendant was unable to ship the paper according to the description (and he has never offered to do so), the $8,800 became "due" at least at that time.[7]

In view of defendant's statement of unwillingness to, and consistent failure to, supply the goods described in the contract, which was a substantial failure of performance, his counterclaim for alleged loss of profits he would have made under the contract does not state an enforceable claim (see §§ 274–276, 317, 318 and 280, Restatement of Contracts; United States v. Penn Foundry & Mfg. Co., 1949, 337 U.S. 198, 69 S.Ct. 1009, 93 L.Ed. 1308). See cases cited under Proposition 4, pp. 5 and 6, of Opinion from South African Counsel, attached to plaintiff's reply brief filed 9/24/57.[8]

The other defenses relied on by defendant in his brief are rejected for the reasons given below.

A. Contention that second order contained in letter of 8/23/54 was sale by sample only.

 A reading of both letters makes clear that the second paragraph of the letter[9] of August 23 only provided that "the quality" of the second order should be according to the sample and did not restrict the plaintiff from also providing in such order that it should conform to a reasonable description of the type included in Order B–28,[10] as summarized in the August 18 letter.[11]

B. Alleged Duress

 Defendant testified (Deposition, p. 13) that plaintiff's Managing Director told him that if he did not sign

---

4. The defendant concedes that allowance may be used to mean a refund in cash, as opposed to a credit. Cf. Stover v. McCaughn, D.C.E.D.Pa.1928, 28 F.2d 1005, 1006.

5. In this case, the court quoted this language from Webster's Dictionary: "* * * * a share or portion allotted or granted; * * * an appropriation for any purpose * * *."

6. In this case, the court said the word "allowance" means "a deduction, *an average payment, a portion assigned or allowed* * * *." (Emphasis supplied.)

7. Both parties recognize that the validity and interpretation of this contract are governed by the law of the Union of South Africa, which was the place where the contract was made and executed. See page 7 of defendant's brief. Since the defendant had no kraft paper-making facilities of his own which were capable of making the paper ordered, the parties could not know what supplier defendant would use nor in what jurisdiction such supplier would be located, so that the place of performance was unknown in August 1954. In the absence of any evidence of South African law on the meaning of "allowance," as used in this contract, the law of Pennsylvania governs. See Linton v. Moorhead, 1904, 209 Pa. 646, 59 A. 264.

8. The discussion at page 8 (see, also, footnote 11) of this opinion makes clear that the goods called for by the contract had to conform to the description as well as to the sample.

9. Paragraph 2 of the August 23 letter provides:
 "We undertake that the quality of the paper will be in every respect the same as the sample against which we sold you 100 (One hundred) Tons (Indent No.: B–28) and that the price shall not exceed 8½ (Eight and onehalf) cents per lb."

10. "Indent" is a synonym for "order" in South African Commercial Circles.

11. See footnote 3 above.

the August 18 letter "of course, you and I cannot do any business. Furthermore, you won't do any business here in South Africa; I'll see to it. On the other hand, if you do compensate me, you will do business. I will intercede in your behalf."[12] This does not constitute a valid defense, since refusal by one party to a contract to enter into a business relationship or the persuasion, by such party, of others not to enter into a business relationship unless the other party enters into the contract is not such duress as excuses performance under the contract. The discussion under Proposition 1 at pages 2–4 of the Opinion of South African Counsel, referred to above, supports the above conclusion. After citing Preller and others v. Jordan, 1956(1) S.A. 483, the opinion contains this language at page 4:

> "The threat of loss of contemplated profits or business patronage cannot in my opinion be regarded as acting in an unprincipled manner or a prejudicial transaction within the meaning of Preller's case." [13]

It has been consistently held in this country that the threat of loss of contemplated profits is not such duress as is contemplated by § 492 of Restatement of Contracts. See Connolly v. Bouck, 8 Cir., 1909, 174 F. 312, certiorari denied 220 U.S. 610, 31 S.Ct. 714, 55 L.Ed. 608; Lawlor v. National Screen Service Corp., 3 Cir., 1954, 211 F.2d 934, 937,[14] reversed on other grounds, 1955, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122.[15]

## C. Alleged Material Alteration

■■ Below the signature of plaintiff's Managing Director on the August 18 letter is typed the words: "I accept the above *exactly as per sample annexed hereto.*" (Italics added.) The underlined words are crossed out in ink and a period added after "above" on both parties' copies of this letter (Exhibits P–4 and P–5).[16] Although defendant testified that he did not know who scratched out these words (Deposition, p. 31) and that "it might have been done after I left" (Deposition, p. 51), he could not explain how these words could have been crossed out, after he left plaintiff's office, on his copy which he took with him when he left and had in his control at all times prior to the deposition (Deposition, p. 51). Defendant also testified that he did not think he would have, and he knows he would not have, permitted

---

12. The glowing language used by defendant in his letters to this Managing Director of October 14, 1954 (Exhibit P–18) and January 19, 1955 (Exhibit P–21), makes this testimony, given less than two years after these letters, hardly conceivable, but the undersigned has considered that the jury would believe this testimony. In P–18, defendant speaks of "the most wonderful hospitality and courteous reception you and your wife gave me." In P–21, he speaks of "the warm feelings that you displayed to me on my recent visit to Johannesburg." See, also, Deposition, p. 40, and the denial of plaintiff's Managing Director at Deposition, p. 171.

13. The case of Blackburn v. Mitchell, 1897, 14 S.C. 338, relied on by defendant, is inapplicable because the facts in it are so different from those present in this case.

14. In this case, the court said at page 937: " * * * It is well settled that merely because one enters into an agreement which he would not enter if he did not need the money there is not such duress as will void the contract. * * * "

15. It is also noted that duress at the time of the execution of a contract is no defense where the party alleging such duress ratifies it at a subsequent time. By proposing and executing the letter of August 23, defendant ratified the agreement contained in the letter of August 18, as modified by the provisions of the later letter. There is no claim of duress at the time this later letter was executed and it constituted a ratification of the contract as amended. Under such circumstances, there can be no excuse to performance of the contract on grounds of duress. See authorities at 17 C.J.S. Contracts § 169, p. 529.

16. Simon Miller, defendant, signed his name under this line on plaintiff's copy of the letter.

the words to be scratched out.[17] Since the only parties present have given their testimony by deposition and defendant's testimony is not sufficient to base a jury finding in his favor on this point,[18] it would seem clear that the alteration was made prior to execution of the agreement by defendant on August 18. However, even assuming the alteration was made after defendant signed the agreement and without his consent, it was not a material alteration since paragraph 2 of the letter (as well as paragraph 2 of the letter of August 23) had, even without this alteration, made the sale one both by sample and by description. The basic legal principle which made defendant unable or unwilling to perform is that goods sold by sample and description must conform to both the sample and the description [19] and defendant was only able or willing to supply goods conforming to the sample.

Alterations of a written instrument which do not affect the legal relationship of the parties or their mutual rights and liabilities are no defense to a suit on that instrument. See Proposition 2 of Opinion of South African Counsel, referred to above; Burke v. Harkins, 1929, 296 Pa. 414, 146 A. 94; Robertson v. Hay, 1879, 91 Pa. 242; Kountz v. Kennedy, 1869, 63 Pa. 187.[20]

In contract actions such as this, where the deposition of the only two persons who negotiated and executed the contract are in the record and there is no factual dispute on a material point in issue, summary judgment is an appropriate remedy. See Shafer v. Reo Motors, Inc., 3 Cir., 1953, 205 F.2d 685.[21]

### Order

And Now, October 3, 1957, it is ordered that plaintiff's motion for summary judgment is granted and judgment is entered for Gummed Tapes (Pty) Ltd., plaintiff, and against Simon Miller, defendant, in the amount of $8,800, with interest at 4% per annum from January 5, 1955, and with costs.

17. Defendant testified at pp. D49 and D50 as follows:
"I believe if I saw this scratched out, I would have objected to it.
\* \* \* \* \*
"Well, Mr. Ward, I don't think that I would have permitted it; in fact, I know I wouldn't."
. Plaintiff contends that these words were probably stricken out because only one sample was attached to the letter of August 18 and three grades of paper were ordered.

18. In Tosh v. Witts, 1955, 381 Pa. 255, at page 259, 113 A.2d 226, 228, the court said:
"\* \* \* The deed was produced at the hearing by the defendants and, admittedly, had been in their possession from the time of its original delivery to them, so that the penciled word 'street' and the penciled abbreviation 'St' must have been contained therein at that time, that is, before its execution, for certainly the defendants would not have written them in thereafter. \* \* \*"

19. Wessels Law of Contract in South Africa (2nd Edition), Vol. 2, paragraph 5038, states:
"If the sale is both by sample and by description, it is not enough that the goods are up to sample. They must also correspond with the description (Lovegrove v. Fisher, 1861, 2F & F. 128; Towerson v. Aspatria Agricultural Cooperative Society Limited; 1872, 27 L.T. 276, Ex.Ch.)."
See, also, page 5 of opinion of South African Counsel referred to above. The law is the same in this jurisdiction. See Farrey's Inc. v. Supplee-Biddle Hardware Co., D.C.E.D.Pa.1952, 103 F.Supp. 488, 490; American Paper & Pulp Co. v. Denenberg, D.C.E.D.Pa.1955, 132 F.Supp. 802, 806, modified on other grounds 3 Cir., 1956, 233 F.2d 610; 1 Williston on Sales (Rev. Ed. 1948), §§ 223, 226, 257.

20. The briefs filed by the parties in this case are being placed in the Clerk's file.

21. The cases cited by defendant indicating summary judgment is not available are inapplicable to the facts of this case.